is 20-1026 S. K. Hynix v. Iancu. Mr. Morris, whenever you're ready. Thank you, and may it please the Court. The Board instituted the underlying IPR by expressly finding that it would be more efficient to have it in parallel with the Ellsbury IPR, which challenged the same claims. But after putting the parties and Board to the burden of the entire proceeding and trial, the Board abruptly terminated the IPR on the eve of its deadline for the final review. Mr. Morris, I know we don't have a lot of time, but could you please speak to the question of reviewability first? Yes. This Court has jurisdiction. And I'm trying to understand what would be your theory of reviewability. Is it any decision that the Patent Board ever renders that can be said to be not attached to the institution decision? That entire class of Board decisions are reviewable under 1295-A-4-A? Well, under 1295-A-4-A, one has to be a decision with respect to inter-parties review, which this one is. It needs to be adverse, which it is to S. K. Hynix. It needs to be final. Here you have all of those requirements are met. It terminated the proceeding adversely to S. K. Hynix, and it is with respect to an inter-parties review. So under 1294-A-4-A, that falls within the ambit. And what's the adverse consequences to S. K. Hynix here? I mean, as I understand it, the PTO argues that, well, this is as if the IPR never existed, and it puts the parties back to where they were or would have been if no IPR had ever been filed in this person. Well, it's adverse in the sense that they had institution. They're put to the burden of proving up their claims and proving up the petition, and then they never receive a ruling on Claims 40 and 41, which are being asserted against them elsewhere. There isn't a requirement of having some other collateral consequence. I mean, typical with agency action where you're before an agency, the agency is determining it, and your petition, your request is denied, which is precisely what happened here. This is unlike the institution decision, and it doesn't even touch upon that. It's not a going back and revisiting institution. This is the proceeding happened, the board determined on separate grounds, and in footnote 3 of appendix 10 even acknowledges that it's making its determination on grounds separate and apart from whether or not to institute. So this isn't a situation where the board is going back and re-evaluating it. This is a situation in which the board carried the proceeding forward, the parties carried the proceeding forward, and then on the very eve, it decided under a different standard to simply conclude the proceeding without addressing the merits of S.K. Honnix's arguments, particularly with claims. What if the estoppel triggering event, and I know you dispute it, that in this case, there was an estoppel triggering event, but assume for the moment the estoppel triggering event occurred after the petition was filed, but before an institution determination was issued, and then the board said, well, the petitioner is estoppel, so certainly not instituting the IPR. Would that be reviewable? That decision, that estoppel decision, would that be reviewable under 1295A4A? The estoppel determination, sorry, just to clarify, the estoppel determination was part of the institution decision? I guess so, yeah. It seems in that context where you're looking at the legal bases for the finding of estoppel, so if there were a challenge to that legal basis, it seems that legal basis under the reasoning of Cuozzo and Thrive is not closely related to institution, whether or not there is a estoppel, and that's clear in the credit acceptance case where the court concluded that it's not uniquely related to institution. In that hypothetical, it might be part of the institution decision, and that may be reviewable, even if the institution decision is not. What did we say in credit acceptance? In credit acceptance, of course. We said something different. I thought we said, well, timing matters. If the estoppel triggering event occurs before institution, then the denial of the petition is based on the estoppel. The estoppel is bound up in that, and that's not reviewable because it's closely tied to the determination the board made to not institute. In that case, the court didn't get into that particular issue of timing. What it did say was that estoppel, there they're talking about Section 325 in CMB, but what they said is it is not uniquely related to institution, and therefore does not fall within the non-reviewability of institution decisions. That was what the court said in credit acceptance, and that applies equally here. It is not uniquely part of. Now, as the hypothetical points out, it maybe factors into a certain point and may arise at various stages throughout the proceeding, but that's something separate in part. It is not a uniquely institution-driven issue like, say, the timing requirements of 315, which the court addressed in Thrive, which only apply at institution. Estoppel can apply at a variety of different stages, and so depending on when that is and how it's wrapped up, it may be reviewable. Here, it's clearly the case that you have it at the end, and it demarks the end termination of a proceeding that carried on for nearly a year. By virtue of the fact that the PTO took up the petition instantly instituted the case, carried it through, had the parties do it, and then used it as a basis to terminate the proceeding without giving S.J. Heinex a ruling on the merits, at least as to Claims 40 and 41, that in- I don't want to eat up all your time. Why don't you go ahead and go back to what you wanted to argue? Sure. With respect, returning back to Estoppel, the board's- Judge Wallach, I just have a little housekeeping question for you before you get going. On page 32 of the blue brief, do Krista J. Lazer of the CPR Estoppel, Florida Law Review, support the assertion that, quote, it is simply not feasible in many cases to raise multiple grounds in a single petition? Who wrote that? I mean, there's a name on it, but who wrote that, and why should we accord it any weight? Are they someone recognized in the field? I believe it is a scholar who is looking into this and researching the particular issue. And, really, it's going and catalogs a variety of the different procedural requirements and what is necessary under the board's regulations. I don't know that the person is entitled to a unique set of weight other than a good collection of the material for the court to consider put into one place. Okay. So it's just a collection. Thank you. Yes. Is there a reason why you didn't file a motion to consolidate all of these proceedings? Yeah. A reason-well, when they were instituted, the board had already considered the two and set them on a similar- I'm talking about all of them so that you wouldn't have been exposed to the possibility of what actually happened here, the first set of IPRs going to final written decision. The board had already- Before the final written decision could come out for the second set. So why not you, the petitioner, why wouldn't you try to consolidate? I mean, there were examples of other times where situations just like this occurred, like, for example, in the IBM versus Intellectual Ventures PTAB IPR case. Well, the-SK Hynix referenced the other petitions, and the board was clearly aware of them in terms of- Right. But is it the board's obligation to organize and coordinate everything so that it benefits you in terms of avoiding a topple? I mean, do they have an obligation to unilaterally do that for you? No, under the statute- Make clear that problems like what happened here won't happen for you by making a motion to consolidate. Well, SK Hynix did make it clear that there was another petition out there. Whether or not there was a request for consolidation, that doesn't eliminate the possibility of topple because that's entirely up to the board, whether or not it's going to consolidate. And here, it essentially did what- But I'm just wondering, why didn't Hynix file the motion to consolidate? Was there a reason to not do it? I'm not aware of a particular reason not to do it. SK Hynix did make that notation to the board that they were related, the board understood they're related, and, in fact, scheduled arguments for the same day and put them on a similar path in terms of timing. So, it's unclear that there was a formal request necessary in that circumstance in order to accomplish a similar thing, which is to put them on a similar path. Just to clarify, am I wrong? I may be misremembering, but there were consolidations that took place with respect to both IPRs, and those were done sui sponte by the board, were they not? And not placed on request by you all? Right. So, there were four different petitions, two in Ellsbury and two in Holbrook, yes. And those were within Holbrook and within Ellsbury. They were consolidated. This is Judge Prowse. The clock continues to run, so let me elide a few issues, because there's so many moving parts in this case. Let's assume jurisdiction, and let's assume hypothetically that we reject your statutory construction of 315. So, what we're left with are the APA arguments. I'm not quite clear what your position is, is that let's assume we're talking exclusively that you're out as the petitioner under 315 under the board construction of that. So, what we're left with is the board's discretion as to whether it wants to proceed independently without the petitioner, correct? Are you following me? Yes. Okay. So, are you all, i.e., even if we're wrong on 315, on our construction of 315, the board still should have exercised its discretion and proceeded with the IPR on its own. Is that your argument? Are you making that argument? Well, we are making the argument that the board's reasoning for declining to do so violated the APA. That is, we asked the board to continue on, even if SK Hynex is adopted. Did you ever ask the board to continue on, on just claims 40 and 41? We didn't make it specific, but we asked them to go ahead and issue the final written decision, which was due the next day, on our Halbert petition, our Halbert-based grounds. So, we asked them to issue the decision, even if SK Hynex were adopted. We asked them to go ahead and issue the decision. They chose not to, and our argument is their reasoning behind that violated the APA. It was arbitrary and capricious. And I realize my time is done, so I'll reserve the remainder unless there are further questions. Colleagues, any further questions at this point? Okay. Let's hear from Ms. Craven. Good morning, Your Honors, and may it please the Court. Starting with the threshold issue, this Court's jurisdiction, the Board's termination decision here is not a final written decision under 318A, and it's not a decision, adverse or otherwise, on the merits of the patentability of the 907 patent claims. And it triggers no estoppel. The Board's decision leaves the parties as if the IPR had never been instituted, and, accordingly, this Court should dismiss SK Hynex's appeal here. To address Judge Chen's hypothetical about... Ms. Craven, I guess one concern I have with that broad statement is that, you know, what the termination decision effectively did was it made a ruling that barred SK Hynex from attacking these claims inside the agency. And, you know, they had an up-and-running proceeding to do just that very thing that the agency had granted, and now the agency was banning them from being able to persist with that. So, I mean, in that sense, it's not like we can pretend in a make-believe world like this proceeding never happened. Something actually did happen to SK Hynex and what it can do in the agency. It's been banned from the agency. That's correct, but that's not based on the Halbert termination decision. That's based on the Ellsbury final written decision. That's the final written decision that triggered the estoppel, and the Halbert termination decision itself doesn't create any additional estoppel for SK Hynex. Obviously, it is the board construing the estoppel statute as applying to the Halbert IPR. So, theoretically, if the agency incorrectly is reading and applying the estoppel statute, then what that means is that the agency theoretically incorrectly terminated and precluded SK Hynex from moving forward with this proceeding. That's, I mean, yes, but that's true of any time that the board makes a, in the institution context, makes a decision and terminates, and that party then cannot have that IPR. There's no right to an inter-parties review even after it's instituted. The statute says if it's instituted and not dismissed, and the board has the discretion for how to run these procedures even independently of the estoppel statute. And so, the board has issued regulations on how that govern inter-parties review, and one of those is being able to terminate a procedure where appropriate. Here, the appropriate, the board thought it was appropriate after applying estoppel, but that's not, there could be other situations. What about SAS Institute, where the Supreme Court said, well, the petitioner has a particular right in the manner in how the IPR proceeds, and the courts get to review agency choices in regulating how those things proceed after they are instituted. That's correct. And so, that's kind of what's going on here, too, where the agency is trying to regulate how this particular proceeding can go forward after institution by shutting it down. Well, in SAS, there was a final written decision, and it was how the board proceeds to that final written decision. Here, there's no final written decision. It is the board terminating a proceeding, but it's not how, this termination doesn't affect how the proceeding occurred up into the fact that there was an estoppel. There's nothing about the scope of the statute regulating what has to happen in a final written decision that's being reviewed here. This is just a termination decision. Unlike credit acceptance, where this court reviewed the estoppel statute, it was where the board found that there was no estoppel, went on to a final written decision, and in that case, the court found that it could review the board's application of estoppel. So, this is just a different context in how the board is proceeding. It's not that there was anything wrong with the particular procedure and how they were going to come to a final written decision if they chose to, as in SAS, where there's a partial institution. Here, it's just once they've construed the estoppel statute and found it applied to SK Hynex and exercising their discretion not to proceed to a final written decision. And that's different than your honors. Yes? Please finish your answer. I'm sorry. Well, so I was going to jump to Judge Chen, your hypothetical about whether for an institution decision, if the estoppel had arisen before institution, and that's really this court's Kingston case, where it's about whether a petitioner can request an inter-parties review after they've already had a final written decision on the same claims. And there, the court, it was non-precedential to say that that decision is closely related to the institution decision and is final and non-appeal and did not review the application of estoppel. This is obviously different. This is like credit acceptance, where the court relied on the fact that it was to maintain the proceeding rather than to request the proceeding, so it was after arising facts. But in that case, again, there was a final written decision. And this, I think, would be the first case where the court has not decided the merits of patentability or the board isn't deciding the merits of patentability, and there's no adverse effect or determination. But what about Arthrex, where Arthrex, there wasn't a final written decision, and our court said, well, there was a decision, and arguably it was with respect to an IPR, and so therefore it fits within the language of 1295A, so therefore we've already said that 1295A4A is broader in scope than 318, 319, and 141C. That's correct. It's the merits of a decision, though, because the patent owner there disclaimed the claims, and the board read that as an adverse judgment against those claims, so it was, in effect, a merits decision, not the merits decision that the IPR statute contemplated, but it was, in fact, a merits decision on those claims and would then have estoppel effects on the patent owner for their continuing applications, which is a different scenario here where there's been no determination in this decision about the merits of the patentability of the 907 claims. So it's not an adverse decision as to patent claims, and it has no estoppel, again, either on SK Hynix or on Netlist patent rights. Can I move you on in the interest of time? This is Judge Prost. Let's assume we agree with you on your statutory construction of 315. What I'm troubled with in this case, just to put it out there, is this APR argument that assuming you're right and the board was correct that the petitioner can no longer proceed, the board still has discretion to proceed on its own, either with the entire IPR or just with claims 40 and 41. And the board here said at least two things, which I think it seemed to rely on, which I think are incorrect. One is their analysis that if they could have filed it the same day, and if they had filed it the same day, they could have avoided estoppel. Would you agree in your brief that was incorrect? And the second was, as they said on A12, the petitioner has obtained all the relief it requested in the instant petition, which is not correct because they didn't prevail on claims 40 and 41. So given those misstatements that were relied upon by the board to reach its decision to not exercise its discretion to proceed on at least claims 40 and 41, why isn't that at least a vacate and remand under the APA? That's a lot of stuff there, but please, if you can respond to me, I'd appreciate it. Yes, so let's start with the statements about the same-day petitions. I think clearly the board was wrong. They cited progressive, and they were assuming incorrectly that same-day petitions would result in same-day decisions. And progressive, this court said, there's discretion when decisions result on the same day filed concurrently. I think the thing is, I'm not sure how this is an APA violation because it seems like it's still part of the board's statutory construction of 315E1, saying that the board doesn't have the discretion to apply estoppel if there isn't. They say same-day petitions, but incorrectly meaning same-day decisions. They don't have the discretion to construe the statute to avoid the estoppel just solely based on when the petitions are filed. So it's really a harmless error when the board says same-day petitions because there's nothing the FK Heineck's APA challenge is really asking the board for a discretion to apply estoppel in a way that the statute can't be read. Well, here's my take on it so you can respond, which is it did make a difference. How do we know that the board, when it said that and it seemingly relied on that, I'm the board and I'm thinking, look, these guys had a chance. They could have filed it on the same day, but they filed it five days later. So they could have – they had complete – they had the authority to get this, to avoid estoppel, and they didn't take advantage of it because they didn't file it on the same day. If that's what the board said, and we all agree now the board was mistaken about that, why could that not have affected how the board resolved the decision as to whether or not it was appropriate just to exercise its discretion, in this case, to proceed? I mean, I think the board was only making those statements as part of its statutory construction. It's not part of its determination on terminating the proceeding. It's wrapped up in how it's responding to SK Heineck's statutory construction arguments. And the board also says – again, I mean, this is in the background, but it also says that they didn't take – they didn't seek consolidation or coordination, which would have been another way for petitions filed the same day or not to be coordinated so that they wouldn't trigger a final written decision. So I think the board was cognizant of that there's other ways that SK Heineck's could have avoided this, not just by filing them on the same day. But there's a difference between the two of those, right? Because they could ask for consolidation, but the board has complete autonomy to refuse to consolidate. Whereas, if the board was under the view that if they had just filed on the same day, they could have avoided this whole mess of estoppel, those are kind of two different things, right? Well, there's more to that point I was making, if I might, just in the interest of time. Sure. Which was what I think was an erroneous statement by the board, which it seemed to rely on, which is the statement they made that I cited just a few minutes ago. About the complete relief, yes. Well, I think they recognized that the SK Heineck's hadn't received all the relief it's requested because it says both of these requests have been granted by the board except as to claims 40 and 41. So earlier on in the decision, the board does erroneously say that they got all the relief they requested. But in their termination decision, they recognized that SK Heineck's did not get the relief they requested on claims 40 and 41. However, the board still thought a just result had been reached and that considering the efficiency of the office and the other considerations and termination, that it was going to terminate. I don't think the board would have gone on. How do we know that? Sorry, excuse me. Let me just finish my question and then you can respond. How do we know that? The board made a very uncritical statement that the petitioner has obtained the relief it requested in the instance petition. So let's assume they meant what they said and that they somehow erroneously believe they had gotten all that. Doesn't that go to whether or not they would exercise their discretion to proceed at least on 40 and 41, if not on the entire IPR? How do we know that that didn't affect their analysis of whether or not it was just for them to proceed? Two answers. I think they explicitly say in the termination section that they recognize that 40 and 41 were not found not on patent. Well, they recognize. Well, except the statement I've read to you repeatedly also appears in the termination portion. It's at 812. I'm not sure how far back. At 812, I read that it's the second full paragraph, the second to last sentence. The board says both these requests have been granted by the board except as to claim 40 and 41. There is an earlier statement, I agree. There is an earlier statement in the background part of the decision where the ‑‑ I'm sorry. They say it in the same paragraph. I'm looking at 812. The statement is petitioner has obtained the relief it requested in the instance petition. Okay. So I think they say it, both things. I think they recognize that 40 and 41 were not found not on patent. But either way, I think it still, if I may finish my thought, Your Honors. Yeah, please. The board at this point is considering that the FAA‑HINAC has gotten the relief for 63 out of the 65 claims. And I think that there was no discretion of the board to go on just to claims 40 and 41 without deciding the rest of the claims because SAS requires the board to write a final written decision as to all claims challenged by the petitioner. So they didn't have the discretion just to give them the relief on the remaining claims 40 and 41. And if there are no other questions, Your Honors, I'm going to ask this. I'll follow up on that because that's an interesting point. I don't think I've seen it come up in terms of the board exercising its discretion to proceed, notwithstanding a conclusion of estoppel, and that they can't pick and choose. It's your position that they cannot pick and choose. That if they proceed, they have to only proceed on the entirety of the ICR that was instituted? I think that's right under SAS. I think there would have been a way, if they had consolidated all of these proceedings and so they had all of them for one final written decision, the board then would have been able to say, we've given you, we've already found these claims unpatentable on the Ellsbury grounds, and so we don't have to go on and find 63 of the 63 claims, again, unpatentable on Halbert grounds. Then they could have gone, the only two claims we have left are 40 and 41, and we could go ahead and decide those on the Halsburg grounds. But that's only if they've consolidated all the petitions into a single final written decision. I think under SAS, with the Halbert IPR proceeding, they would have had to go forward and decide all the grounds. Okay. Thank you. Colleagues, any further questions for Ms. Craven? No, thank you. No. Okay. Mr. Morris, we turn back to you. We'll restore five minutes of rebuttal if you need it. Returning to Appendix 12 and the statement with regard to claims 40 and 41, the statement that the board recognized except as to 40 and 41 cannot cure the problem there. Because right after that, the board says confusingly, even though the claims are canceled in a different IPR, it never says what are IPR, and I'm unaware that there has been any cancellation of claims 40 and 41. So it is just a blatantly wrong error in the board's analysis. Why would the board's opinion say the request to invalidate these claims has been granted by the board except as to claims 40 and 41? Why would you call out claims 40 and 41 in that sentence unless you were acknowledging  and that when you go on and say that the claims were canceled in a different IPR, it's the other 63 claims that you're referring to or other 65 claims you're referring to? Why wouldn't that be the most reasonable understanding of that sentence, given that it expressly calls out the claims that are still standing, that is, claims 40 and 41? Even though the claims were canceled in a different... Yes, even though the claims that were canceled were canceled in a different IPR. I still don't see that in the sentence you're referring to. So are you suggesting that the board here was trying to say that claims 40 and 41 were canceled in the different IPR, in the Ellsbury IPR? That's the way the sentence reads in terms of even though it's referring back to the claims 40 and 41. I thought at your blue brief, page 57, you say, quote, As the board itself acknowledged, S.K. Heinex had not received relief with respect to claims 40 and 41, which the board did not find unpatentable in the Ellsbury IPR. Yes. So, I mean, you're reading it in what I think is the most reasonable understanding of that sentence. That the board, in fact, as in your words acknowledged, S.K. Heinex had not received relief with respect to claims 40 and 41, which the board did not find unpatentable in the Ellsbury IPR. But the recognition that the board seems to be, and again, it's muddled in that whole discussion, seems to be suggesting that it's harmless with regard to S.K. Heinex because even though it didn't happen in Ellsbury, it happened elsewhere. But that's not correct. It hasn't happened elsewhere. Claims 40 and 41 are still alive. They're still being asserted against my client. And so the entire discussion is just wrong. Yes, the board does offer some fig leaf in terms of acknowledging that 40 and 41 are out there. The board is essentially saying, the board seems to be saying, look, of the 65 claims of this patent, 63 of them are now gone. So, basically, you've already been successful. You've got a 97% success rate here. So, you know, the next question is, for us as the board, are we going to go through a complete do-over of all 65 claims in this particular proceeding now that you've been stopped from further continuing on in this proceeding? That's putting, essentially, words in the board's mouth in terms of how to read that, where they are saying that we got the relief we requested, which we didn't. Well, Mr. Morris, this is Judge Probst. Can I just insert in that, I mean, no matter what the board said, the board had no guarantee. I mean, Netless filed a cross-appeal on the case that we just heard about a half hour ago. Correct. So while the board obviously thought it was right with respect to 63 of the 65 claims, well, as to all the claims, there was no certainty or certainly no guarantee that our court would not reverse their decision, which would have left you with no relief whatsoever on either prior art ref, right? Correct. Can I just, okay, well, I'm going to extend the time a little because I just have a question about the APA, and I was raising with Ms. Craven. Firstly, do you agree with her final point, which is an interesting one that I, frankly, as to whether or not, again, assuming that you're wrong on your interpretation of 315, whether the board would have discretion to proceed on its own with respect to just 40 and 41 or whether it would have been required under SAS to do the whole thing, all the claims? Do you have a response? Well, I don't know of a requirement that would force them to take that step, especially when they're dealing with a unique situation. What about Section 318A, the words of the statute itself? The board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner. That's correct. And the petition, as we all know from SAS Institute, is the driving force as to what the playing field is going to be for the entire proceeding. And the petition that was granted, when you combine them together, had specific articulated challenges as to all 65 claims. That's correct. And that does make sense. And that fits in also with what the board typically considers in these types of situations, which is the public interest in having these things determined and decided, which is a consideration they just did not make and completely ignored from its other cases. Mr. Morris, let me ask you just one final question on this APA thing. And that is, let's assume hypothetically that the board didn't make the misstatement about how, if they had filed on the same day, it could have avoided a stop-all. And let's assume the board didn't kind of make this mumbo-jumbo thing about whether or not you got all your relief or didn't get all your relief. In other words, if the board rested virtually entirely, as far as we know, on the efficiency, this is a big deal, this is a lot of time, this is going through 63 or 65 claims again. Would there be any basis to argue that that would not be something that we would have to defer to in terms of the board's judgment of its spending of resources, which are considerable in this case? Well, they do have to reconcile at least the finding with regard to efficiency that they made early on. I mean, one... Okay, let's take that off the table, too, then. This is a lot of work. We've only got a month left. We've already decided that we're exercising our discretion on behalf of the office to not proceed on these 65 claims again and issue a written decision,  but would you have any basis for arguing for an APA challenge in that circumstance? I mean, one issue that they failed to grapple with or discuss, which would be a failing on their part, was the burden already incurred by the parties over the course of the last year and in terms of the balance there. Okay. Anything else from my colleagues? Not from me. Thank you. Thank you. We thank both sides, and the case is submitted.